IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

STEPHEN A. MOBLEY,

              Plaintiff,

v.                                                 Civil Action No. 3:11cv283-JAG

ADVANCE STORES COMPANY,
INCORPORATED,

              Defendant.

## MEMORANDUM OPINION

This is an action seeking damages for failure to accommodate under the Americans with Disabilities Act of 1990[1] ("ADA") and retaliation in violation of Title VII of the Civil Rights Act of 1964[2] ("Title VII").  The matter is before the Court on the defendant's motion for summary judgment.  No response was filed by the *pro se* plaintiff.  The matter is now ripe for review.  The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials presently before the Court, and argument would not aid in the decisional process.  For the reasons discussed herein, the defendant's motion will be granted.

### I. Background

The plaintiff, Stephen Mobley, was employed by the defendant, Advance Stores Company, Inc. ("Advance"), from August 21, 2006 through July 16, 2008.  He was originally hired as a store manager at Advance Auto Parts Store 9022 in Chantilly, Virginia, but was transferred to a Fredericksburg, Virginia branch in January of 2008.  Over the course of his employment, Mobley experienced medical difficulties and took several leaves of absence

---

[1] 42 U.S.C. § 12101, *et seq.*
[2] 42 U.S.C. § 2000e, *et seq.*

pursuant to the Family and Medical Leave Act of 1993[3] ("FMLA")—from August 24 to September 7, 2007; from October 20, 2007 to January 11, 2008; and from April 14 to July 16, 2008.

When serving as store manager, however, Mobley was disciplined several times for violating a company policy that required management to make at least one bank deposit prior to 2:00 PM daily. The policy clearly noted that any violation could result in disciplinary action including termination. According to the defendant, Mobley violated the deposit policy on eight separate occasions from June 2007 to April 2008.[4] Following his first violation, he was given a written corrective interview to reemphasize the deposit rule. Then, in October of 2007, Mobley received a final corrective interview for violating the policy on three consecutive days. Notwithstanding these disciplinary meetings, he violated the policy four more times in 2008. Finally, on April 14, 2008, Mobley left work because he was feeling sick. Following several consultations between Keith Manuel (Mobley's direct supervisor), Mark Woodring (the human resources manager in Mobley's region), and Advance's legal department, the defendant reached a decision on April 22 to terminate his employment. When Mobley finally returned from his third period of FMLA leave on July 18, 2008, Manuel immediately informed him of his termination.[5]

On September 25, 2008, Mobley filed a Charge of Discrimination with the Virginia Council on Human Rights and the Equal Employment Opportunity Commission ("EEOC") alleging that he was denied a reasonable accommodation in violation of the ADA; that he was

---

[3] 29 U.S.C. § 2601, *et seq.*
[4] Acting as store manager, Mobley failed to make the required daily deposit on: June 23, 2007; September 14, 15, and 16, 2007; March 8, 9, and 12, 2008; and April 12, 2008.
[5] Notably, the FMLA only provides for twelve (12) weeks of leave in a single 12-month period. *See* 29 C.F.R. § 825.100(a). From October 2007 to July 2008, Mobley took medical leave for a total of over five (5) months.

2

discharged in retaliation for participation in protected activity in violation of Title VII; and violation of the mediation agreement into which the parties entered on March 11, 2008, following the plaintiff's 2007 EEOC charge.[6]  After examining the facts of Mobley's case, the EEOC was unable to conclude that Advance violated either the ADA or Title VII.  The case file was closed on January 31, 2011.

On April 29, 2011, the plaintiff filed a *pro se* complaint (the "Complaint") in this Court, alleging violations of sections 12112(b)(5)(A) and (B) of the ADA as well as section 2000e-3 of Title VII.  Thereafter, Mobley filed an "amended complaint," which the Court treated as a motion to amend the Complaint and name the correct defendant.  (*See* Dk. No. 12.)  On October 27, 2011, Advance filed the instant motion for summary judgment.  Mobley was granted an extension of time to respond to the motion; yet, he never made a filing by the December 19, 2011 deadline.  (*See* Dk. No. 22.)  To this date, no response to the defendant's motion has been filed. The matter is ripe for review.

## II. Standard of Review

Summary judgment is appropriate where there is no genuine issue as to any material fact in the case.  *See* Fed. R. Civ. P. 56(c).  Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986); *Masterson v.*

---

[6] Mobley's 2007 EEOC charge appears to involve derogatory and discriminatory comments alleged to have been made by Mobley's division manager at the defendant's Chantilly, VA branch.  In his complaint, the plaintiff attempts to link those events to some alleged discrimination in the defendant's termination decision.  The Court finds no evidence to support Mobley's contention.  Moreover, to the extent Mobley seeks to establish that the 2007 events constitute direct evidence of discrimination, the Court finds this argument unsupported and unavailing.  The plaintiff's former supervisor in Chantilly took no part in Mobley's termination decision, nor is there any indication that the 2007 charge has any connection to the 2008 charge or the instant matter.  In sum, the plaintiff has failed to allege any evidence of retaliation under the ADA or Title VII.

3

*Wyeth Pharmaceuticals*, No. 3:08cv484, 2009 WL 1106748, at *2 (E.D. Va. April 23, 2009). A genuine issue of material fact exists when there is sufficient evidence on which a reasonable jury could return a verdict in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Hence, a court will grant summary judgment when a party fails to make a showing sufficient to establish the existence of any essential element of the party's case on which that party has the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *see also Griffin v. Prince William Health System*, No. 01:10cv3592011, 2011 WL 1597508, at *2 (E.D. Va. April 26, 2011). A movant need only show that there is an absence of evidence or support for the opposing party's case. *Id.* at 325. If the nonmovant fails to identify specific facts that demonstrate a genuine and material issue for trial, then the court will grant summary judgment "to prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex Corp.*, 477 U.S. at 324-25); *see Anderson*, 477 U.S. at 247–48. "Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law." *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 308 (4th Cir. 2006) (citing *Felty*, 818 F.2d at 1128).

### III. Discussion

#### 1. *ADA Claims*

The ADA prohibits discrimination against any "qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). In his Complaint, the plaintiff's disability-discrimination

4

claims under the ADA are solely based on the statute's "failure to accommodate" provisions, 42 U.S.C. § 12112(b)(5)(A) and (B). (*See* Compl. 1, ¶¶ III.A.1-A.2 ("Advance . . . violated the [ADA] by not providing reasonable accommodation.").) Because the plaintiff lacks any direct evidence of discrimination, he must employ circumstantial evidence to prove his claims, using the three-step, burden-shifting approach from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). As such, Mobley has the initial burden of establishing a *prima facie* case of discrimination.[7] *See Perry*, 429 Fed. App'x at 219-20.

To establish a *prima facie* case for failure to accommodate, the plaintiff must demonstrate that: (1) he had a disability; (2) the defendant had notice of the disability; (3) he could perform the essential functions of his job with a reasonable accommodation; and (4) the defendant refused to make such an accommodation. *Rhoads v. FDIC*, 257 F.3d 373, 387 n.11 (4th Cir. 2001) (quoting *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2d Cir. 1999)); *see Sydnor v. Fairfax County*, No. 1:10cv934, 2011 WL 836948, at *6 (E.D. Va. Mar. 3, 2011). "Disability" is defined as: "(1) a physical or mental impairment that substantially limits one or more of the major life activities; (2) a record of such impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2). "Substantially limited" means "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to . . . the average person in the general population." 29 C.F.R. § 1630.2(j)(1)(ii); *see Bateman v. Am. Airlines, Inc.*, 614 F. Supp. 2d 660, 670 (E.D. Va. 2009) (Noting that, to determine substantial impairment, courts look to "the nature and

---

[7] Under the *McDonnell Douglas* approach, the plaintiff has the initial burden of demonstrating a *prima facie* case of discrimination. *See Perry v. Computer Sciences Corp.*, 429 Fed. App'x 218, 220 (4th Cir. 2011). If established, the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for its action. *Id.* If a nondiscriminatory reason is provided, the burden shifts back to the plaintiff to show by a preponderance of the evidence that the proffered reason was a pretext for discrimination. *Id.*

severity of the impairment, the duration or expected duration of the impairment, and the permanent or long term impact of the impairment."). "Major life activities" include: "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).

Here, the plaintiff has failed to show that he was disabled within the meaning of the ADA. His Complaint provides the conclusory statement: "The plaintiff has been diagnosed by a medical physician with numerous medical disabilities." (Compl. 2.) Mobley also implies that a physician's work release he submitted following a period of FMLA leave establishes his disabled status.[8] These claims constitute the full extent of support Mobley offers for his disability. *See Kothe v. Continental Teves, Inc.*, 461 F. Supp. 2d 466, 474 (W.D. Va. 2011) ("It is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of an impairment."); *see also* 29 C.F.R. §825.702(b) (The "ADA's 'disability' and FMLA's 'serious health condition' are different concepts, and must be analyzed separately."). Mobley submitted no credible evidence to suggest that he had a record of or was even regarded as having an impairment. Furthermore, his allegations fail to show that he was substantially limited in any major life activity. Ultimately, Mobley's evidence simply reveals

---

[8] The work release states: "Mr. Stephen Mobley can perform the following requirements without any restrictions: paperwork, sales, customer service, and inventory management without any restrictions. The tasks of cleaning, stocking, cashiering, and loading/unloading the truck can be performed with the following guidelines—bending, stooping, crouching, kneeling, and standing as tolerated for periods of time (He may only tolerate very brief periods of these activities). No lifting more than 15 lbs. No crawling or climbing of any kind at this time." (Compl., Ex. K.) The language of the work release clearly cuts against Mobley's claims—he was decidedly not "substantially limited" in a "major life activity." *See* 42 U.S.C. § 12102(2).

that he had some medical problems that caused a minor impact on his capabilities as store manager, not an ADA-covered disability.[9]

The Court finds that the plaintiff has not shown a disability within the meaning of the ADA; therefore, he has failed to carry his burden and demonstrate a *prima facie* case for failure to accommodate.[10] His claims will be dismissed.

## 2. *Title VII Claim*

Title VII, in pertinent part, prohibits employers from retaliating against an employee "because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). "It shall be an unlawful employment practice for an employer—(1) to fail or refuse to hire or to discharge . . ., or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." *Johnson v. Portfolio Recovery Assocs., LLC*, 682 F. Supp. 2d 560, 569 (E.D. Va. 2009) (quoting 42 U.S.C. § 2000e-3). To establish a *prima facie* case of Title VII retaliation, the plaintiff must prove that: "(1) he engaged in protected activity; (2) he suffered an adverse employment action at the hands of [the defendant]; and (3) [the defendant] took the adverse action because of the protected activity." *Johnson*, 682 F. Supp. 2d at 568 (quoting *Bryant v. Aiken Reg'l Med. Ctrs. Inc.*, 333 F.3d 536, 543 (4th Cir. 2003)).

---

[9] Even assuming the plaintiff had a disability, the Court finds insufficient evidence to show that Advance had notice of the disability, that he could perform the essential functions of his store manager position with a reasonable accommodation, or that Advance refused to make an accommodation. In short, Mobley failed to demonstrate any of the factors necessary to establish a *prima facie* case for failure to accommodate.

[10] To the extent the Complaint makes another type of claim under the ADA (other than a failure to accommodate), the Court finds that such claims also fail because Mobley has not shown that he has ever been a qualified individual with a disability under the ADA.

In this case, Mobley claims that he was retaliated against, through his corrective interviews and ultimate termination, as a result of the mediation agreement he reached with Advance in March 2008.[11]  As support, he highlights the fact that the assistant store manager at his Advance branch, Loretta Eckman, was not also disciplined for failing to make the required daily bank deposits.  Mobley seems to infer, therefore, that Advance discriminated and retaliated against Mobley not because of his failure to make the deposits, but because of the mediation agreement.  The evidence before the Court, however, offers no support for this claim.

First, Mobley has never engaged in, nor alleged he engaged in, a protected activity under Title VII.  As admitted in the Complaint, the 2007 EEOC charge dealt solely with Mobley's alleged disability, not his race, color, religion, sex or national origin.  (Compl. 4.)  He, therefore, has not made a claim involving a status protected under Title VII, and cannot satisfy the first *prima facie* element.

Second, assuming the mediation agreement implicated Title VII's protections, Mobley cannot show that his corrective interviews and termination were a result of the protected activity.  On the contrary, the evidence before the Court clearly demonstrates the plaintiff's repeated violation of company policy.  Moreover, these violations occurred both before and after the 2007 charge and were the sole force behind Advance's ultimate decision to fire him.  *See Mehta v. Potter*, No. 1:07cv1257, 2009 WL 1598403, at *11 (E.D. Va. June 4, 2009) ("Because adverse actions had been taken against [plaintiff] before the filing of her EEOC complaint, one cannot infer retaliatory animus from the other similar, adverse employment actions taken against her over a year after the filing of the EEOC complaint.").

---

[11] As previously mentioned, the mediation agreement resulted from a 2007 EEOC charge the plaintiff brought against the defendant for derogatory statements made by his former supervisor in Chantilly, Virginia.

8

Accordingly, the Court finds that the plaintiff has not demonstrated a *prima facie* case of retaliatory discrimination under Title VII.  The defendant's motion will be granted.

### IV. Conclusion

For the reasons stated above, the Court will grant the defendant's motion for summary judgment.  The case is dismissed.

It is so ORDERED.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record and mail a copy via U.S. mail to the *pro se* plaintiff.

/s/

John A. Gibney, Jr.
United States District Judge

Date: January 26, 2012
Richmond, VA